UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JUANITA MAE SMITH** | **CASE NO. 6:23-CV-00123** |
| **VERSUS** | **JUDGE DEE D. DRELL** |
| **COMMISSIONER OF SOCIAL SECURITY** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court recommends that the Commissioner's decision be affirmed.

### Administrative Proceedings

Claimant, Juanita Mae Smith, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for supplemental security income ("SSI") benefits alleging disability beginning on June 1, 2018. (Rec. Doc. 7-1, p. 202). Her application was denied. She then requested a hearing, which was held on July 12, 2022, before Administrative Law Judge ("ALJ") Steven Rachal. The ALJ issued a decision on September 26, 2022, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed

disability onset date[1] through the date of the decision. (Rec. Doc. 7-1, p. 20-33). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 7-1, p. 1-6). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

Claimant was born on February 28, 1970. She was 50 years old on the alleged disability onset date and 52 years old at the time of the ALJ's decision. She completed the 9th grade and did not obtain a GED. (Rec. Doc. 7-1, pp. 45-46). She testified that she "did CNA" but did not pursue it. (Rec. Doc. 7-1, p. 46). She last worked in 2003. (*Id*.) She lives with her daughter but will stay periodically with her mother for about a week at a time. (Rec. Doc. 7-1, p. 54). She alleged that she has been disabled since September 19, 2020, due to post-traumatic stress disorder, depression, back and neck problems, high blood pressure, chronic obstructive pulmonary disease, emphysema, and migraines. (Rec. Doc. 7-1, p. 72).

Claimant alleges that she had a stroke in November 2021. (Rec. Doc. 7-1, pp. 46-47). She reported that since then, she has headaches, gets unbalanced, and has

---

[1] At the July 12, 2022 hearing, Claimant amended the alleged disability onset date to September 19, 2020, the filing date of her application for SSI benefits.

2

experienced problems with speech. (*Id.*). She does not have an assistive mobility device but claims to have fallen 4 to 5 times. (Rec. Doc. 7-1, pp. 47-48). Per Claimant, she can stand/walk for 5 to 10 minutes; she has pain in her lower back that causes problems when on her feet; and she can sit for 5 to 10 minutes. (Rec. Doc. 7-1, pp. 49-50). She stated that she could not work an 8-hour workday because she cannot mentally handle being around others. (Rec. Doc. 7-1, p. 50). She stated that she can be around family but no one else. (*Id.*). She stated that she does not drive. (Rec. Doc. 7-1, p. 52). Claimant can bathe, prepare meals, and feed herself. (Rec. Doc. 701, pp. 54-56). She can manage her own finances, handle paperwork, and make decisions. (Rec. Doc. 7-1, p. 58).

The medical records in the record reveal the following pertinent history:

- Records from Beacon Behavioral Hospital reveal that Claimant has been treated for anxiety and depression. On January 17, 2020, Claimant was admitted to Beacon Behavioral Hospital following an emergency department stay for a suspected suicide attempt. At intake, Claimant reported that she was "stressing and really wanted to sleep so she took 15-20 Seroquel 25mg tablets." She indicated that she used to be on a similar dosage level without any problems, but her husband got upset and called EMS. Claimant denied any auditory or visual hallucinations as well as any current suicidal or homicidal ideations. She admitted non-compliance with her medications. (Rec. Doc. 7-1, pp. 353).

- On January 18, 2020, Claimant again denied suicidal and homicidal ideations as well as hallucinations. Her affect was flat, and her mood was guarded. Claimant again explained that her overdose was the result of her trying to "get the right dose." She ate and slept well and was compliant with medications and groups. (*Id.*).

- On January 19, 2020, Claimant was noted as interacting well with staff and peers. She tolerated medication well. She again denied suicidal and homicidal ideations as well as hallucinations. (*Id*.).

- On January 20, 2020, Claimant's mood was improved, and her affect was appropriate. Her medications were adjusted, and she was scheduled for discharge the next morning. At the time of discharge, her thought processes were improved and she was responsive to interactions as well as initiating appropriate interactions with staff and peers. She was able to demonstrate increased awareness of mental illness/condition, as well as warning signs of exacerbations. She also demonstrated improved medication compliance, and her physical status was stable for discharge. (*Id*.).

- Claimant has been treated by her primary care physician, Beau Brouillette, M.D., for lower back pain since at least October 2019. On October 8, 2020, Claimant reported moderate pain radiating to the buttocks, muscle aches, joint pain, and back pain but reported no muscle weakness, no swelling in the extremities, no neck pain, no difficulty walking, no cramps, no osteoporosis, and no fractures. Claimant further reported no loss of consciousness, no weakness, no numbness, no seizures, no dizziness, no migraines, no headaches, no tremor, no gait dysfunction, and no paralysis. Claimant denied nosebleeds.  (Rec. Doc. 7-1, pp. 362-365).

- On October 8, 2020, Dr. Brouillette completed a physical capacity assessment wherein he indicated a diagnosis of lower back pain.  He opined that Claimant could walk two city blocks without rest or significant pain; could sit for 4 hours; could stand/walk for 4 hours in an 8-hour workday; could frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds; and would likely be absent 3 to 4 times per month due to her physical limitations. (Rec. Doc. 7-1, pp. 404-405).

- On October 8, 2020, Dr. Brouillette also completed a Mental Capacity Assessment form provided by Claimant's representative. At that time, he opined that Claimant has mild limitation in the ability to sequence multi-step activities and the ability to use reason/judgment to make work-related decisions; moderate limitation in the ability to sustain an ordinary routine and regular attendance at work; mild limitation in the ability to work at an appropriate and consistent pace, or complete tasks in a timely manner; moderate limitation in the ability to manage psychologically based

symptoms; mild limitation in the ability to adapt to changes; and mild limitation in the ability to handle conflicts with others or the ability to keep social interactions free or excessive irritability. (Rec. Doc. 7-1, pp. 401-403).

- On February 10, 2021, Claimant met with Dr. Brouillette and was positive for muscle aches, joint pain, and back pain but was negative for muscle weakness, swelling in the extremities, neck pain, difficulty walking, cramps, osteoporosis, and fractures. Claimant denied experiencing loss of consciousness, weakness, numbness, seizures, dizziness, migraines, headaches, tremor, gait dysfunction, or paralysis. This examination was largely consistent with that from October 8, 2020. The doctor found Claimant to be healthy-appearing and ambulating normally. (Doc. 7-1, pp. 430-434)

- On May 17, 2021, Claimant again met with Dr. Brouillette. The results from her physical and neurological examinations were unchanged from those obtained 3 months earlier. The doctor again found Claimant to be healthy-appearing and ambulating normally. (Rec. Doc. 7-1, pp. 425-429).

- On September 15, 2021, Dr. Brouillette again evaluated Claimant. She reported the same symptoms as reported on February 10, 2021, and May 17, 2021. Dr. Brouillette reached the same assessment that she was healthy-appearing and ambulating normally. (Rec. Doc. 7-1, pp. 420-424).

- On December 27, 2021, Claimant again met with Dr. Brouillette. Her physical and neurological examinations remained consistent with those obtained over the past 10 months. Dr. Brouillette again found Claimant to be healthy-appearing and ambulating normally. (Rec. Doc. 7-1, pp. 415-419).

- Dr. Brouillette evaluated Claimant again on May 5, 2022. His findings were largely consistent with those documented since February 10, 2021. Although he found her to be healthy-appearing and able to normally ambulate, Claimant reported that she had been noticing slurred speech for the past three months and had experienced recurring headaches. Dr. Brouillette documented slurred speech and a limited range of motion and ordered a brain MRI. (Rec. Doc. 7-1, pp. 444-448).

5

- On July 5, 2022, Claimant presented to Avoyelles Hospital emergency department complaining of chronic back pain and right rib pain after falling off a horse two weeks prior. Claimant told staff that the symptoms began/occurred two days prior. She described the pain as moderate and non-radiating. The doctor noted that Claimant's gait was steady, at a normal pace, and diagnosed acute back pain, rib contusion, and musculoskeletal pain. No medications were administered. An x-ray of the lumbar showed chronic degenerative disc disease with associated dextroscoliosis. There were no signs of fractures or bone destruction. (Rec. Doc. 7-1, pp. 467-472).

- Claimant also underwent a pre-scheduled brain MRI on July 5, 2022, at Avoyelles Hospital. That study revealed an old appearing ischemic infarct in the left frontal lobe and old lacunar type infarct in the left capsule as well as age-related changes in the periventricular areas. There were no obvious signs of active ischemic disease. (Rec. Doc. 7-1, p. 473).

The ALJ found that Claimant suffered from the severe impairments of depressive disorder; generalized anxiety disorder; sciatica; degenerative disc disease; and residual effects of cerebrovascular accident ("CVA"). (Rec. Doc. 7-1, pp. 22). Nonetheless, the ALJ found Claimant was not disabled because she had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except Claimant can stand and/or walk 4 hours in an 8-hour workday; can sit 4 hours in an 8-hour workday; can understand, remember and carry out simple instructions and tasks for 2-hour blocks of time; can have occasional work-required interaction with the public; and can tolerate changes in the workplace that are infrequent and gradually introduced. (Rec. Doc. 7-1, pp. 20-33). Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

The Commissioner's findings must be affirmed as conclusive when they are supported by substantial evidence. 42 U.S.C. § 405(g); *Martinez*, 64 F.3d at 173. In determining whether the Commissioner's findings are sufficiently supported, a court must carefully examine the entire record but cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa*, 895 F.2d at 1022. To that end, the court may not re-assess credibility or independently resolve conflicts in the evidence. *Scott v.*

*Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience. *Wren*, 925 F.2d at 126.

**B.     Entitlement to Benefits**

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a).  See also *Smith v. Berryhill*, 139 S. Ct. 1865, 1772 (2019). SSI provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled. 42 U.S.C. § 1382(a)(1) & (2).  See also *Smith*, 139 S. Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his age, education, and work

experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. **Evaluation Process and Burden of Proof**

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

While the claimant bears the burden of proof on the first four steps, the Commissioner assumes the burden on the fifth, and must show that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D. **The ALJ's Findings and Conclusions**

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since September 19, 2020. (Rec. Doc 7-1, p. 22). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: depressive disorder; generalized anxiety disorder; sciatica;

degenerative disc disease; and residual effects of CVA. (Rec. Doc. 7-1, p. 22). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 7-1, pp. 22-24). Claimant does not challenge this finding.

The ALJ found Claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except Claimant can stand and/or walk 4 hours in an 8-hour workday; can sit 4 hours in an 8-hour workday; can understand, remember and carry out simple instructions and tasks for 2-hour blocks of time; can have occasional work-required interaction with the public; and can tolerate changes in the workplace that are infrequent and gradually introduced. (Rec. Doc. 7-1, p. 24-26). Claimant challenges this finding.

At step four, the ALJ found Claimant has no past relevant work. (Rec. Doc. 7-1, p. 26). Claimant does not challenge this finding.

At step five, the ALJ found that a significant number of jobs which Claimant was capable of performing existed in the national economy. (Rec. Doc. 7-1, p. 27-28). Claimant challenges this finding to the extent she challenges the ALJ's RFC finding.

E. **The Allegation of Error**

Claimant alleges the ALJ erred by failing to develop the record regarding her CVA and instead improperly relied on his own lay interpretation of the medical evidence in assessing Claimant's RFC.

F. **Whether the ALJ properly developed the record regarding Claimant's CVA and properly assessed Claimant's RFC.**

Claimant challenges only the ALJ's RFC finding that she is capable of performing light duty work, subject to restrictions. Specifically, Claimant alleges that the ALJ failed to develop the record regarding her CVA and improperly relied on his own lay interpretation of the medical evidence in assessing her RFC. Claimant argues that the ALJ should have obtained a consultative examination to assess any residual limitations attributable to the CVA or have an independent medical expert review the evidence with respect to this impairment.

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ is responsible for determining a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making a finding in that regard, the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.

12

*Martinez*, 64 F.3d at 176. The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983). In making a residual functional capacity assessment, an ALJ must consider all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ must consider the limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

This Court rejects Claimant's contention that the ALJ failed to consider the residual effects of the CVA. To the contrary, the ALJ expressly noted that additional evidence regarding the CVA had been obtained at the hearing level and acknowledged that this evidence – obtained after Claimant had developed new symptoms around February 2022 and 4 years after filing her application for benefits – showed that Claimant's impairments were more limiting than initially thought. (Rec. Doc. 7-1, p. 26). However, the ALJ found that said impairments did not rise to the level of disabling. (*Id.*).

Pertinent to Claimant's contentions, the ALJ considered Claimant's testimony that she had a stroke around November 2021 and experienced sequelae in the nature

13

of slurred speech, migraines, nosebleeds, and balance issues. (Rec. Doc. 7-1, p. 24). Claimant's testimony, however, is not and cannot be substantiated by any of the medical records. As the ALJ noted, on December 27, 2021, one month after her alleged stroke, Claimant met with Dr. Brouillette. Claimant denied muscle weakness, difficulty walking, and nose bleeds. (Rec. Doc. 7-1, p. 25 and pp. 415-419). Dr. Brouillette observed that Claimant was healthy-appearing, with normal ambulation. (*Id*.).

On May 5, 2022, 6 months after her alleged stroke and just 2 months prior to the July 12, 2022 administrative hearing on this matter, Claimant met with Dr. Brouillette where she reported that she had no difficulty walking, no exercise intolerance, no nosebleeds, no migraines, no headaches, no gait dysfunction, and no excessive bleeding. (Rec. Doc. 7-1, p. 25 and pp. 444-448). Similarly, Dr. Brouillette observed that Claimant ambulated normally, with normal gait and station, but did document a limited range of motion and slurred speech as reported by Claimant. (*Id*.). As such, Dr. Brouillette ordered an MRI. (*Id*.).

The MRI took place on July 5, 2022; thus, the ALJ was able to review its findings. The MRI revealed findings consistent with a remote ischemic infarct in the left frontal lobe and old lacunar type infarct in the left capsule. (Rec. Doc. 7-1, p. 26 and 473). However, there were no obvious signs of active ischemic disease. (Rec. Doc. 7-1, p. 473). The ALJ considered these findings but determined that said

14

impairments were not disabling when weighing the subjective and objective evidence of record. (Rec. Doc. 7-1, p. 26). The Court would be remiss not to note that Claimant's brain MRI postdated her riding, and falling off, of a horse; an activity she felt comfortable to undertake more than a half-year following her alleged stroke, contemporaneous treatment for which is not found in the record. (See Rec. Doc. 7-1, pp. 467-472).

Claimant contends that this case requires a remand as a matter of law because there was no credible and supporting medical opinion as to the effects of Claimant's severe CVA impairment on her ability to work. This Court disagrees and finds Claimant's reliance upon *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) misplaced. In *Ripley*, new evidence was obtained *after* the ALJ made his decision. *Id*. at 556. The Court found that the new evidence obtained from the claimant's second surgery was not known at the time of his administrative hearing and thus remand was appropriate because there was a reasonable probability that the new evidence would change the outcome of the decision. *Id*. at 555.

Here, the evidence of Claimant's CVA was presented to the ALJ, both in the form of medical records and testimony. Claimant testified to her belief that she had a stroke around November 2021 and stated that she has since experienced residuals of slurred speech, migraines, nosebleeds, and balance issues. The ALJ considered Claimant's testimony; however, many of Claimant's own reports to her medical

providers, namely Dr. Brouillette, contradict her alleged residuals as noted above. The ALJ thoroughly reviewed both the subjective and objective evidence in finding that Claimant could perform a reduced range of light work despite her complaints, and that finding is supported by the record evidence. Claimant further failed to provide additional evidence regarding any limitations on her functional capacity, despite being given the opportunity to do so in October 2022. Therefore, this matter is facially distinguishable from *Ripley* as Claimant's disagreement is based on the ALJ's credibility determinations and weight ascribed to the evidence before it; not the subsequent development of new evidence that could not have been considered. Accordingly, this Court finds that the ALJ's decision is supported by substantial evidence in the existing record. Accordingly, Claimant's assignments of error are meritless.

## **Conclusion and Recommendation**

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 11th day of October, 2023.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).